IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERNEST H. BAKER, III,

        Petitioner,

    v.

RICK COURSEY,

        Respondent.

Case No. 2:13-cv-01612-SI

OPINION AND ORDER

Anthony D. Bornstein, Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Nick M. Kallstrom, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

1 - OPINION AND ORDER

SIMON, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court conviction for Murder. Because petitioner is unable to excuse the untimely filing of this case, the Petition for Writ of Habeas Corpus (#1) is dismissed.

## BACKGROUND

The State of Oregon charged petitioner with one count of aggravated murder in March 2004 based on the death of his six-month old son, hereinafter referred to as Ernest IV. Respondent's Exhibit 102. Where petitioner appeared to face long odds at trial and claimed he could not recall the events of that day clearly, he agreed to enter a no-contest plea to intentional murder. As a result, the trial court dismissed the aggravated murder charge and sentenced him to a term of life imprisonment with a 25-year minimum. Respondent's Exhibits 101, 104.

On March 28, 2006, petitioner filed for post-conviction relief ("PCR") in Umatilla County Circuit Court. Respondent's Exhibit 106. Petitioner's appointed attorney in the PCR action felt that trial counsel had performed well and achieved an "outstanding negotiated plea." Petitioner's Exhibit 1. PCR counsel also advised petitioner that in the unlikely event they could find a meritorious claim so as to secure relief and proceed to a criminal trial, he would once again face the possibility of receiving a

death sentence. *Id.* Counsel therefore strongly urged petitioner not to proceed with the PCR challenge. *Id.* As a result, petitioner voluntarily dismissed his PCR action on November 14, 2006. Respondent's Exhibits 107, 108.

On August 21, 2008, petitioner filed his first federal habeas corpus action challenging his murder conviction. The District Court dismissed the case as untimely and declined to issue a certificate of appealability. Respondent's Exhibit 118. Petitioner appealed those decisions, but the Ninth Circuit Court of Appeals also denied petitioner's request for a certificate of appealability.

On May 6, 2010, petitioner filed a second state PCR action which the PCR trial court dismissed as untimely and improperly successive. Respondent's Exhibit 111. The Oregon Court of Appeals affirmed that decision without opinion, and the Oregon Supreme Court denied review. *Baker v. Coursey*, 250 Or. App. 144, 281 P.3d 685, *rev. denied*, 352 Or. 377, 290 P.3d 813 (2012).

On March 15, 2013, petitioner applied to the Ninth Circuit for permission to bring a successive 28 U.S.C. § 2254 habeas action in this District. The Court of Appeals granted petitioner's application and directed the Clerk to transfer the Petition to this court. Petitioner's Exhibit D, p. 16. Respondent asks the court to dismiss the Petition because it is untimely. Petitioner concedes that the Petition is untimely, but asks the court to

conduct an evidentiary hearing where he can establish his actual innocence so as to overcome the timeliness bar.

## DISCUSSION

Habeas corpus petitioners must generally file their federal challenges to their state convictions within one year of the time those convictions become final by the conclusion of their direct review. 28 U.S.C. 2244(d)(1)(A). A petitioner who fails to comply with this deadline may overcome such a default if he is able to show that he is actually innocent of his underlying criminal conduct. *McQuiggin v. Perkins*, --- U.S. ----, 133 S.Ct. 1924, 1928 (2013). In order to make a gateway showing of actual innocence, a petitioner must present "new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial" which establishes that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995).

In the context of a habeas petitioner who seeks to introduce new evidence in an evidentiary hearing to establish his claim of actual innocence, "the court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Id* at 331-32. "[A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not

4 - OPINION AND ORDER

as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown[.]" *McQuiggin v. Perkins*, 569 U.S. ----, 133 S.Ct. 1924, 1928 (2013).

Where petitioner opted to forego his trial in favor of a no-contest plea, the court cannot weigh any evidence adduced at a trial.[1] However, during petitioner's entry of plea hearing, the State indicated that had the case proceeded to trial, it was prepared to present the following evidence:

> The baby in this case was almost seven months old. His throat had been cut. [D'Ann Honea], the mother of the victim, would have testified that she want over to the home of the defendant to retrieve a dresser and when she arrived there, she noticed the defendant had an injury to his own neck, that she tried to get him to get medical attention for that, to go with her to the hospital or a doctor, that he refused. That she then placed the baby in a car carrier in the back seat of her car and she lost track of where the defendant was. She went looking for the defendant and while she was looking for the defendant, the defendant had come around and gotten the baby out of the back seat of the car and taken the baby inside the house. She saw them head inside the house. The door was locked, she was unable to get inside. She could hear the infant crying. She heard the crying suddenly stop. She was pounding on the door, screaming, trying to get inside. She went around back, she got inside through a back sliding glass door. The defendant was no longer in the

---

[1] In this way, application of the *Schlup* actual innocence test to cases such as this one is difficult. *See Smith v. Baldwin,* 510 F.3d 1127, 1140 n. 9 (9th Cir. 2007) (en banc) (recognizing "a potential incongruity between the purpose of the actual innocence gateway announced in *Schlup* and its application to cases involving ... no contest[ ] pleas.").

home, nobody was in the home at that time, and
she saw that the infant was injured, grabbed
the baby, put it in the car and took it to
Rogue River where she tried to obtain some
medical assistance and got 911 and so forth,
but the baby did die of the injury of loss of
blood at the hospital.  A sword was found in
the residence, that was determined to be the
cause of the injury.  That sword, witnesses
would have testified, belonged to the
defendant, it had the baby's blood on that
sword.  The defendant, when he returned to the
residence, made a statement to the police that
he had taken a life today and someone took his
life today.  There would have been numerous
other witnesses that would have further just
filled in and corroborated [D'ann Honea's]
statement as to her actions.  Neighbors who
heard her screaming, saw her running to the
car with the infant.

Respondent's Exhibit 104, pp. 5-6.

Against this backdrop, petitioner asserts that he can
establish his innocence so as to overcome the untimely nature of
this habeas action.  In his Brief in Support of the Petition for
Writ of Habeas Corpus, petitioner specifically identifies his
"Evidence Supporting Innocence" to consist of: (1) the fact that
his own blood was not on the murder weapon; (2) the victim's blood
was found to be on the right leg of Honea; (3) his statements to
the police were not reliable given the circumstances of the
questioning; (4) Honea had said "How could I have done this to my
baby"; and (5) Dash Terry, an investigator with the Federal Public
Defender's Office, discovered new evidence when petitioner's sister
told him that she had seen Honea place a pillow over the Ernest

6 - OPINION AND ORDER

IV's face in the weeks before the homicide. Brief In Support (#38), pp. 8-11.

Before assessing this evidence of innocence, the court first notes that petitioner's second PCR Attorney, Manuel Perez, hired an investigator, Mark Stephens, who met with a woman named Erica Bowen.[2] According to the contents of Stephens' unsworn letter, Bowen related the following to him when he met with her on June 10:

> [Erica Bowen] has known D'Ann Honea for sometime. Approximately three days after the baby was killed she saw D'Ann Honea sitting on the hood of her car at the Shell gas station on Morgan Lane in Grants Pass. She recalled it being about 2:00 am. The car was a blue car with a white racing stripe.
>
> She asked D'Ann how she was doing and D'Ann replied "I am doing good I am high". Erica replied to D'Ann that she thought that was understandable after what she had been though. D'Ann then got in the car and began crying. Erica then bent down to speak to D'Ann through the window of the car, at which time she saw the backseat of the car covered in blood. Erica asked her what the blood was from and she said it was from her son.
>
> She then asked D'Ann why she did not wash it off and D'Ann told her it was the only memory she had of her son. Erica asked her how the blood got there and D'Ann told her she put her son in the car to go get help and drove around for four hours because she was afraid to get help.
>
> Erica then asked her what had happened and D'Ann told her that she and Ernie were fighting and that Ernie attacked her. At the

---

[2] In his report, Stephens refers to the woman as both Erica Bowen and Erica Baker. Petition Exhibit A, p. 2.

> time he was holding the baby in his arms and
> refused to give the baby back.  D'Ann said she
> had a knife and swiped at Ernie and when she
> did that she cut Ernie and the baby.
>
> Erica then asked D'Ann what was going on with
> Ernie and she told her that Ernie is
> protecting her because Ernie does not want her
> to go to jail.   D'Ann then became very
> hysterical and said she wanted help at which
> time Erica told her if it was an accident God
> would forgive her.

Petition Exhibit A, pp. 2-3.

In his Brief in Support, petitioner alludes to this document but does not argue its contents, reference it within the "Evidence Supporting Innocence" section of Brief, or state that he would like to produce Bowen at any evidentiary hearing.  As a result, on June 25, 2015, the court ordered petitioner to file a Supplemental Memorandum specifically addressing whether he anticipated calling Bowen as a witness if the court were to allow an evidentiary hearing.  Petitioner responded, "Upon thorough investigation of the case, Ms. Bowen would not be called at the hearing in this case, should the Court grant an evidentiary hearing."   Supplemental Memorandum (#48), p. 2.  As a result, the court views the Stephens' unsworn letter containing triple-hearsay a nullity for purposes of the actual innocence analysis.

With respect to the evidence of innocence petitioner does argue, he points to a single piece of new evidence: Dash Terry's interview with petitioner's sister, Amanda Baker.  Amanda Baker informed Terry that in the weeks prior to Ernest IV's murder, Honea

attempted to smother his face with a pillow.  Petitioner's Exhibit 4, p. 2.  Petitioner asserts that Ms. Baker should be allowed to testify at an evidentiary hearing about this episode to assist him in meeting his burden under *Schlup*.  He asserts that this testimony is especially important in light of the following inconsistences in the existing record: (1) despite having bloody hands from his own neck wound his blood was never found on Ernest IV, the murder weapon, or in the room where the murder took place; (2) Honea's initial statement in the wake of the crime was incriminating when she said, "How could I have done this to my baby" four or five times; (3) Honea had Ernest IV's blood on her clothes whereas petitioner did not; and (4) the prosecutor's statement of the case to the trial court appears to be internally inconsistent where it has petitioner taking Ernest IV from the back of Honea's car, and also wresting control of the baby from Honea's grasp.

With the exception of his sister's statements to Terry, all of the evidence of innocence petitioner points to is old evidence that was available to him when he entered his no-contest plea and voluntarily dismissed his PCR action when his appointed attorney, following investigation with a seasoned capital investigator, feared that any "victory" would expose him to the very real possibility of a capital sentence.  In addition, the discrepancies petitioner points to are somewhat difficult to evaluate in the absence of a trial record.  Nevertheless, the inconsistencies can

be largely explained insofar as: (1) petitioner's blood may not have been found everywhere, but it was found at the scene of the crime, including on the baby seat in which Ernest IV was murdered; (2) Honea explained that her statements concerning how she could have done "this" to her baby pertained to the fact that petitioner had been able to wrestle Ernest IV away from her before taking him inside the residence where the murder took place (Petitioner's Exhibit 3, p. 15); (3) Honea predictably had Ernest IV's blood on her clothes where she carried him out of the residence and accompanied him to the hospital before he died of loss of blood; and (4) consistent with the prosecutor's statement of the case to the trial court, Honea stated to authorities that petitioner removed Ernest IV from the car, but she had him in her arms before petitioner grabbed the baby away from her, and saw him go into the house. *Id.*

Petitioner fails to effectively explain: (1) his statement to police that he had "taken a life" that day;[3] (2) how Honea came to use his sword to murder Ernest IV when the sword belonged to petitioner, and where she was no longer living with petitioner following a recent separation; and (3) why multiple witnesses were

---

[3] While petitioner claims this was a delusional response to the officer's question, this was a highly incriminating statement a jury would have been hard-pressed to disregard, especially in light of the other evidence tending to show petitioner's guilt.

prepared to testify that Honea's actions on the day of the murder were consistent with her own statements.

Moreover, while Amanda Baker obviously recounted a troubling story to the investigator, the impact of that new evidence is minimal where: (1) the events do not directly bear upon the crime of conviction; (2) Baker could be considered to be a biased witness; (3) and she is offering her story for the first time nine years after her brother's original plea and in the wake of a variety of unsuccessful state and federal challenges to his conviction. *See McQuiggin*, 133 S.Ct. at 1936 (delay in presenting evidence of actual innocence "should seriously undermine the credibility of the actual-innocence claim.").

For these reasons, even if Ms. Baker were to testify during an evidentiary hearing in a manner consistent with the investigator's Affidavit, petitioner would be unable to show that it is more likely than not that no reasonable juror would have voted to convict him of murder. As such, the court declines to hold an evidentiary hearing. *See Schriro v. Landrigan*, 127 S.Ct. 1933, 1940 (2007) (where the record in the case precludes habeas relief, a district court is not required to hold an evidentiary hearing). Because petitioner is unable to make a gateway showing of actual innocence, the court dismisses this case because it is untimely.

///

///

11 - OPINION AND ORDER

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#1) is dismissed. The court does, however, grant a Certificate of Appealability on the issue of whether petitioner has made a sufficient showing of actual innocence to excuse his untimely filing.

IT IS SO ORDERED.

DATED this _30th_ day of July, 2015.

Michael H. Simon
United States District Judge